IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEREMY M. SAX, | ) | Case No.  3:15 CV 2495 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| JASON BUNTING, WARDEN, | ) | THOMAS M. PARKER |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |

## I.    Introduction

Petitioner Jeremy Sax has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences in *State v. Sax*, Case No. CRI-2013-0199.  ECF Doc. No. 1.  Respondent Warden, Jason Bunting,[1] has filed a return of writ.  ECF Doc. No. 5.  And Sax has filed a traverse.  ECF Doc. No. 6.

The matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Sax's petition or other case-dispositive motions.[2]  Because Sax has presented only procedurally defaulted and meritless claims, I recommend that the Court dismiss Sax's petition.

---

[1]  Jason Bunting is Warden of the Marion Correctional Institution in Marion, Ohio, where Sax is incarcerated.  ECF Doc. No. 5 at Page ID# 25.

[2]  This matter was referred initially to Magistrate Judge Greg A. White; upon his retirement it was referred to the undersigned.

## II.        Factual Background

The Ohio Court of Appeals set forth the following facts underlying Sax's convictions:

{¶ 3} . . .  Treva Campbell, appellant's half-sister, testified that on March 1, 2013, she was living with appellant, her three children, her boyfriend, Larry Thornsberry, Brittany Fernekees and her infant son. Campbell testified that she was aware that appellant, Thornsberry, and Fernekees were addicted to heroin because they were all acting differently.

{¶ 4} Campbell testified that on March 1, 2013, she was preparing to go to a drugstore in Norwalk, Ohio, when the three, without elaborating, asked her to stop by a home. Campbell testified that previously the three discussed how they could get more heroin from the victim which included some deal involving a computer laptop. At the victim's home, Brittany, the victim's ex-girlfriend, went into the home with her cell phone on speakerphone so the males could monitor the negotiations. Campbell testified that appellant and Thornsberry eventually exited the vehicle and went in to the home. Campbell stated that they returned a few minutes later and that they were in a hurry.

{¶ 5} Campbell testified that she wanted to get to the drugstore before it closed but that they had her drive down a back road and slow down. Campbell stated that she saw appellant throw a gun out of the window. According to Campbell she asked Thornsberry what had happened and he told her not to worry about it. Campbell said that when they got to the drugstore she observed that they had money in a sock. Campbell also observed drugs. Campbell testified that approximately one hour after they returned home, the police arrived at her home.

{¶ 6} During cross examination, Campbell admitted that she had been criminally charged and had entered a plea in relation to the incident. Campbell stated that she entered a plea of guilty to tampering with evidence and that other charges had been dismissed. She denied that she was promised any deal in her case in exchange for her testimony.

{¶ 7} Larry Thornsberry testified next. Thornsberry stated that he entered guilty pleas to tampering with evidence and burglary. Thornsberry testified that he met appellant in 2005 or 2006 while they were in jail. Thornsberry stated on March 1, 2013, he, appellant and Fernekees all lived in the same house and were addicted to heroin. He further indicated that he and appellant had been discussing a plan to rob the victim of his heroin. Thornsberry identified an air pistol that had been modified to look like a real gun (the orange tip had been removed.) He stated that he did not know that appellant had brought the weapon with him to the victim's house.

{¶ 8} On that day, Thornsberry stated that Fernekees let them into the victim's house but that the victim wanted them out. Thornsberry stated that they then used force to rob the

2

victim of his money and heroin. Specifically, Thornsberry testified that he got the victim in a "choke hold" and that appellant hit him in the head with the gun.

{¶ 9} After leaving the victim's house, Thornsberry testified that they slowed down by a creek and appellant threw the gun out of the window. Once home, Thornsberry stated that appellant and Fernekees split the heroin with him which totaled about "21 or 22" balloons; he immediately began shooting the drugs. At appellant's request, Thornsberry hit appellant several times to fabricate a story about an altercation in case the police became involved.

{¶ 10} Thornsberry admitted that he gave varying statements to police in order to avoid criminal charges. Thornsberry further agreed that he was initially charged with tampering with evidence, robbery, burglary, and possession of drugs but that through an agreement with the state he entered a plea to one count of tampering with evidence.

{¶ 11} Huron County Sheriff's Deputies, Jeff Kerber and Todd Corbin, testified that following the incident they were dispatched to Thornsberry's home. Deputy Kerber stated that he observed six or seven small balloons containing what he suspected to be heroin in the bathroom. Kerber clarified that prior to entering the house, looking in the exterior window, he saw both appellant and Thornsberry go in and out of the bathroom.

{¶ 12} According to Deputy Corbin, appellant stated that he and the victim fought because the victim owed appellant money. Corbin also identified appellant as the individual sitting behind the defendant's table.

{¶ 13} Detective Sergeant Josh Querin testified that Thornsberry informed him that the weapon involved was not a handgun; it was a BB pistol with the red tip removed and which had been discarded. He was also informed that it was wrapped in a sock. According to Detective Querin, Thornsberry accompanied them around back roads in an attempt to locate the weapon. Fernekees and Campbell were able to provide a more accurate location and the weapon was found after several hours of searching.

{¶ 14} Sheriff's Deputy and shift supervisor Charlton Summers testified that when the hospital called to report the possible assault he informed them to have the victim come to the station to make a report. The victim arrived approximately one hour later and was interviewed and his injuries were photographed. According to Summers, two of the names the victim provided, Casper and Wendell, were "monikers." Deputy Summers stated that appellant was known as Casper and Thornsberry was known as Wendell.

{¶ 15} Deputy Summers interviewed appellant who stated that they were at the victim's house and that Fernekees went in to get her laptop and pay $40 that she owed him. She was also going to try and purchase drugs. Fernekees put her phone on speaker so appellant could monitor the situation. Appellant stated that the victim was making "passes" at her so he ran into the home and a fistfight ensued. Appellant did not state that he had a weapon.

{¶ 16} Steve Shupp of the Huron County Sheriff's office testified that on March 2, 2013, he received a call from the hospital regarding a possible assault. Deputy Shupp went to the home where the alleged incident to place and spoke with a juvenile witness. After learning the identities of the alleged perpetrators, they proceeded to Thornberry's residence. Shupp then identified appellant in the courtroom.

{¶ 17} The juvenile referred to by Shupp, D.H., testified that at the time of the incident he was 16 and living with his great-aunt; the victim resided there as well. D.H. stated that on the night of the incident he was upstairs at the home when he heard someone burst in and say get down on the ground. D.H. went to the top of the stairs and observed Fernekees, who he knew, and "some kid" hitting the victim in the head with a gun. Another man was holding the victim. D.H. could not identify appellant in court, but stated that there was talk that his nickname was Casper. After the gun was pointed at him he went back upstairs.

*State v. Sax*, 2015-Ohio-77, ¶¶ 3-17.  These facts "shall be presumed to be correct," unless Sax

rebuts then by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161

F.3d 358, 360-61 (6th Cir. 1998).

## III.     Relevant State Procedural History

### A.     Trial Court

On April 12, 2013, a Huron County grand jury indicted Sax on four counts:  robbery, in

violation of Ohio Rev. Code § 2911.02(A)(2) ("Count I"); aggravated burglary, in violation of

Ohio Rev. Code § 2911.11(A)(1) ("Count II"); tampering with evidence, in violation of Ohio

Rev. Code § 2921.12(A)(1) ("Count III"); and possession of heroin, in violation of Ohio Rev.

Code § 2925.11(A)(C)(6)(a) ("Count IV").  ECF Doc. No. 5-1 at Page ID# 56-57.  Sax pleaded

not guilty to all charges.  ECF Doc. No. 5-1 at Page ID# 59.

Sax moved for a change of venue, but the case remained in Huron County.  ECF Doc.

No. 5-1 at Page ID# 63-72.  The trial began on October 1, 2013. ECF Doc. No. 5-1 at Page ID#

72.  After the close of the State's case, Sax moved for acquittal on all counts pursuant to Ohio

Criminal Procedure Rule 29.  ECF Doc. No. 5-1 at Page ID# 72.  As to the heroin possession

charge, the state appellate court explained, "[c]ounsel argued that the substance was never tested.

4

Counsel further argued that the state failed to prove appellant's identity as the perpetrator of the crimes charged." *Sax*, 2015-Ohio-77, ¶18.  The trial court granted a judgment of acquittal on Count IV, the heroin possession charge, but denied it as to the other counts.  ECF Doc. No. 5-1 at Page ID# 72.

The jury returned guilty verdicts on the robbery, aggravated burglary, and evidence tampering counts.  ECF Doc. No. 5-1 at Page ID# 72.  On October 10, 2013, the trial court sentenced Sax to serve a ten year prison term for aggravated burglary and a consecutive two year term for tampering with evidence, for an aggregate sentence of twelve years.  ECF Doc. No. 5-1 at Page ID# 83.  The court merged the robbery and aggravated burglary charges and imposed no sentence for the robbery charge.  ECF Doc. No. 5-1 at Page ID# 83.

### B.  Direct Appeal

Sax, through the same counsel who represented him at trial, filed a timely notice of appeal in the Ohio Court of Appeals.  ECF Doc. No. 5-1 at Page ID# 88-95.  His appellate brief presented two assignments of error:

1.  The trial court erred in denying Appellant's Rule 29 Motion to Acquit.

2.  There was insufficient evidence to find Appellant guilty beyond a reasonable doubt.

ECF Doc. No. 5-1 at Page ID# 97.  On January 9, 2015, the state court of appeals affirmed the judgment of the trial court.  ECF Doc. No. 5-1 at Page ID# 131-39; *Sax*, 2015-Ohio-77.

Sax, acting *pro se*, filed a timely notice of appeal to the Ohio Supreme Court.  ECF Doc. No. 5-1 at Page ID# 140-41.  Sax's memorandum in support of jurisdiction asserted six propositions of law:

1.    Huron [County Court of] Common Pleas [has] a duty to protect those on trial from inherently prejudicial publicity that renders jury's deliberations unfair.

2.    Defendant's tattoos were so pervasive and prejudicial making it impossible to seat an impartial jury and could not be cured by voir dire.

3.    Where the Defendant's identity as the perpetrator of the crime is not demonstrated beyond a reasonable doubt, trial court commits constitutional error in denying Rule 29 motion.

4.    It is constitutional error for trial court to allow state to admit heresay [*sic*] evidence and evidence via other means to be the testimony of the alleged victim of the crime, denying the defendant the right to confront his accuser.

5.    The separation of witnesses order by the trial court is a protection for both, the State and Defendant, and is a constitutional violation where witnesses violates [*sic*] that order to collaberate [*sic*] their testimony.

6.    Where trial counsel fails to raise cognizable and winning issues when representing the Appallant [*sic*] on appeal, then Appellant has been denied effective assistance of appellate counsel.

ECF Doc. No. 5-1 at Page ID# 143-44 (capitalization altered).  The court declined to accept jurisdiction of the appeal on June 3, 2015.  ECF Doc. No. 5-1 at Page ID# 158.

**C.    Application to Reopen Direct Appeal**

Earlier, on February 23, 2015, Sax filed a *pro se* application to reopen his direct appeal in the Ohio Court of Appeals, pursuant to Ohio Appellate Rule 26(B).  ECF Doc. No. 5-1 at Page ID# 159-68.  Sax's petition raised five claims for relief:

1.    Trial court committed constitutional error for failing to order change of venue where proper motion had been filed prior to trial, and a change of venue was warrented [*sic*].

2.    The trial court committed constitutional error where it allowed jury to be prejudice[d] by seeing Defendant's extensive tattoos.

6

3.      Trial court committed constitutional error where it failed to acquit Appellant where witnesses for the prosecution could not identify Appellant as purpetrator [*sic*].

4.      Trial court committed constitutional error where it allowed heresay [*sic*] testimony and evidence of victim of crime by other State's witnesses where declarant was available but did not testify.

5.      The trial court committed constitutional error for failing to secure a separation of the States [*sic*] witnesses[,] allowing them to collaborate their testimony.

ECF Doc. No. 5-1 at Page ID# 161-65.

On April 16, 2015, the state appellate court denied Sax's application, finding no basis to conclude that Sax was denied effective assistance of appellate counsel.  ECF Doc. No. 5-1 at Page ID# 169-74.  A review of the online docket of the Ohio Supreme Court shows that Sax did not appeal the court of appeals' judgment.  *See* *http://supremecourt.ohio.gov/Clerk/ecms/#/caseinfo*.

**IV.     Federal Habeas Corpus Petition**

Sax's *pro se* petition for writ of habeas corpus, ECF Doc. No. 1, asserts six grounds for relief:

1.      Trial court failed to order change of venue where proper motion was filed prior to trial and was warrented [*sic*].

        Supporting Facts:  Trial court wholly ignored properly filed motion for change of venue, where facts demonstrated change was warrented [*sic*].  Pretrial publicity was so prejudicial as to render an impartial jury verdict.  A violation of Plaintiffs [*sic*] constitutional rights.

2.      Petitioners [*sic*] tattoos were so [p]ervasive and [p]rejudicial making it impossible to seat an impartial jury[.]

        Supporting Facts:  [C]ounsel at trial raised Petitioner being prejudiced against by the jury seeing his extensive tattoos covering his face, head, neck, arms,

7

hands, yet the trial court forced it to be only addressed in [v]oire [d]ire.  Further the [p]rosecutor was allowed to direct witnesses [*sic*] attention to [P]etitioners [*sic*] tattoo's [*sic*], some being gang[-]related to insure [*sic*] Petitioner was prejudiced at trial.

3. Petitioners [*sic*] [i]dentity was not established beyond a reasonable doubt and trial court should have granted the [j]udgment for [a]cquital motion.

   Supporting Facts:  No State witnesse's [*sic*] identified the [P]etitioner as the purpetrator [*sic*] of the crimes for which he was on trial for.  The State was allowed to simply use character assasination [*sic*] and innuendo as the method to obtain a conviction.

4. Trial court allowed the State to repeatedly use hearsay evidence and other means to be the sole testimony of [the] alleged victim of [the] crime[,] denying Petitioner [the right] to confront his accuser.

   Supporting Facts: The victim of the crime was not present at trial.  The trial court allowed heresay [*sic*] evidence to testify for the alleged victim and calculatingly denied Petitioner the right to confront his accuser.

5. Trial court denied Petitioner's [c]onstitutional rights by allowing witnesses for the State to violate courts [*sic*] separation of witness order.  Allowing witnesses to collaborate their testimony.

   Supporting Facts: Witness for the State Treva Campbell, upon giving her testimony was duly admonished by the Court[,] "Don't discuss your testimony with anyone until after a verdict is reached in this case[."]  Ms. Campbell left the stand and went into the hallway and began collaborating her testimony with the States [*sic*] next witness[,] Larry Thornsberry.

6. Trial and Appellate Counsel Sarah A. Nation failed to raise cognizable and winning issues on appeal[,] denying Appellant [e]ffective [a]ssistance of [c]ounsel.

   Supporting Facts:  Appellant [c]ouncil [*sic*] failed to raise several cognizable and winning issues on appeal, specifically the majority of the issues within this petition, hence Petitioner was denied his [c]onstitutional [r]ights.

8

ECF Doc. No. 1 at Page ID# 5, 7, 8, 10, 12.  Respondent filed a return of writ on March 18, 2016.  ECF Doc. No. 5.  On April 13, 2016, Sax filed a traverse.  ECF Doc. No. 6.

## V.     Standards of Review

### A.     AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Sax's petition for writ of habeas corpus.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)). The Act "recognizes a foundational principle of our federal system:  State courts are adequate forums for the vindication of federal rights."  *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Id*.

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).  A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision.  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

 "Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions."  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent.  *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error."  *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003).

The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).  This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence.  28 U.S.C.  § 2254(e)(1).  The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims.  The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").  Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted).  Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103.  This is a very high

11

standard, which the Court readily acknowledges:  "If this standard is difficult to meet, that is because it is meant to be."  *Id*. at 102.

### B.    Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition."  *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).  It "does not require pursuit of a state remedy where such a pursuit is clearly futile."  *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to:  (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available.  *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.  In determining procedural default, the federal court again looks to the last explained state-court judgment.  *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

12

Where a state court declines to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id*. at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).[3]

A petitioner also may procedurally default a claim by failing to "fairly present" the claim in state court, and pursue that claim through the state's "ordinary appellate review procedures," if, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are

---

[3] In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit outlined the now familiar test to be followed when the state argues that a habeas claim is defaulted because of a prisoner's failure to observe a state procedural rule. It is:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. Second, the federal court must determine whether the state courts actually enforced the state procedural sanction -- that is, whether the state courts actually based their decisions on the procedural rule. Third, the federal court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further citations omitted).

no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).[4]

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner,

---

[4] Federal habeas courts review a petitioner's state-court briefs to determine whether he or she fairly presented a claim as a federal constitutional claim, examining the petitioner's:

> "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."

*Williams*, 460 F.3d at 806 (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

something that cannot be fairly attributed to him." *Id.*  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.*  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## VI.  Analysis

### A.  Grounds One, Two, Four, and Five:  *Trial-Court Error*

In Sax's first, second, fourth, and fifth grounds for relief, he challenges the trial court's: failure to rule on his motion to change venue (Ground One); denial of his motion regarding the allegedly prejudicial exposure of his tattoos at trial (Ground Two); admission of alleged hearsay testimony (Ground Four); and permitting witnesses to violate the court's separation of witnesses order (Ground Five).  ECF Doc. No. 1 at Page ID# 5, 7, 10, 12.  Respondent correctly argues that these claims are procedurally defaulted.  ECF Doc. No. 5 at Page ID# 37-39.

Sax did not fully and fairly present these claims to the state courts.  Claims such as these, arising out of the record of proceedings in the trial court, must be raised on direct appeal or they are waived under Ohio's doctrine of *res judicata*.  *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata.");  *State v. Perry*, 10 Ohio St. 2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal).  Sax attempted to present the claims on direct appeal, but only in the Ohio Supreme Court in his memorandum in support of jurisdiction.  *See* ECF Doc. No. 5-1 at Page ID# 143-44.  As noted

above, habeas petitioners must "fairly present" federal constitutional claims "in each appropriate state court" before seeking relief in the federal courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Accordingly, "[a] habeas petitioner's submission of a new claim to the state's highest court on discretionary review is not a fair presentation to the state's courts." *Hruby v. Wilson*, 494 Fed. Appx 514, 517 (6th Cir. 2012) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). And Ohio's *res judicata* rule now prohibits Sax from raising the claims in any state post-conviction proceeding. These claims are procedurally defaulted unless a legally sufficient ground excuses the default.

Sax asserts that his appellate counsel "neglected" to raise these claims despite his request that she do so. ECF Doc. No. 1 at Page ID# 6, 7, 10. "Attorney error that constitutes ineffective assistance of counsel is cause" to excuse the procedural default of a habeas claim. *Coleman v. Thompson*, 501 U.S. 722, 754 (1991). However, claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim if the ineffective-assistance claim itself is procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Sax attempted to raise ineffective assistance of appellate counsel claims (for railing to raise these trial-court-error arguments) to the state appellate court when he applied to reopen his direct appeal. *See* ECF Doc. No. 5-1 at Page ID# 161-65. The court of appeals denied the application on its merits. ECF Doc. No. 5-1 at Page ID# 169-74. Sax did not appeal that judgment, however, and he no longer can do so.[5] *See* Ohio S. Ct. Prac. R. 7.01(A)(4)(c) (no delayed appeals permitted in Rule 26(B) proceedings). His ineffective assistance of appellate counsel

---

[5] Sax argues in his traverse that he did in fact raise these claims to the Ohio Supreme Court in his memorandum in support of jurisdiction. ECF Doc. No. 6 at PageID# 413. The claims to which he refers, however, are the underlying claims of trial-court error that he asserted in his direct appeal, not the appellate counsel ineffective-assistance claims he raised to the state appellate court in his reopening application.

claims are, therefore, procedurally defaulted.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (to preserve claims for federal habeas review, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims").  And Sax offers no argument regarding the cause for, or prejudice resulting from, the default, or that he is actually innocent.

Consequently, Sax's ineffective assistance of appellate counsel claim – based on the non-pursuit of trial court errors – cannot serve as cause to excuse the procedural default of those claims.  *Edwards*, 529 U.S. at 453.  Moreover, because Sax has not established sufficient legal "cause," for his procedural default, there is no requirement that the court now consider whether Sax was prejudiced by the procedural default of these four claims.  *See, e.g., Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).  Sax also does not argue that his actual innocence should excuse his procedural default of these claims.

Thus, Sax's first, second, fourth, and fifth grounds for relief are procedurally defaulted.  I recommend that they be dismissed for that reason.[6]

### B.      Ground Six: *Ineffective Assistance of Appellate Counsel*

Sax's sixth ground for relief alleges ineffective assistance of appellate counsel.  To support this claim, he states only that counsel "failed to raise cognizable and winning issues on

---

[6] Even if these claims were not procedurally defaulted, they would fail.  Sax presents only conclusory allegations with no reference to evidence from the record or legal authority.  Moreover, the undersigned has reviewed the state appellate court's decision denying his application to reopen his direct appeal, which claimed his appellate counsel was ineffective for failing to raise these claims.  The court found "no genuine issue" regarding ineffective assistance because the underlying claims at issue (and at issue here) lacked merit.  *See* ECF Doc. No. 5-1 at PageID# 169-74; *see also Jones v. Barnes*, 463 U.S. 745, 750-54 (1983) (appellant has no constitutional right to have every non-frivolous issue raised on appeal); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) ("[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." (internal quotation marks and citations omitted)).  I agree with the state court's reasoning, and would find these claims meritless had they been properly presented.

17

appeal, specifically the majority of the issues within this petition . . . ."  ECF Doc. No. 1 at Page ID# 12.  Apart from the claim's insufficient argumentation, for the same reasons explained above in regard to Sax's first, second, fourth and fifth grounds, the sixth claim is procedurally defaulted.  I recommend that the Court dismiss Sax's sixth ground for relief.

### C.        Ground Three:  *Insufficiency of the Evidence*

Sax's third claim asserts that his conviction was not supported by sufficient evidence.

His entire argument is this:

> No State witnesse's [*sic*] identified the [P]etitioner as the purpetrator [*sic*] of the crimes for which he was on trial for.  The State was allowed to simply use character assasination [*sic*] and innuendo as the method to obtain a conviction.

ECF Doc. No. 1 at Page ID# 8.  Respondent argues this claim is meritless.  ECF Doc. No. 5 at Page ID# 48-52.

The Ohio court of appeals, the last state court to address Sax's insufficiency claim, rejected it, reasoning:

> {¶ 20} We will jointly address appellant's assignments of error. Appellant first argues that the trial court erred in failing to grant appellant's motion for an acquittal at trial due to insufficiency of the evidence to support a conviction. Such a motion is made under Crim.R. 29(A) and is treated on appeal under the same standard that is applied to claims challenging the sufficiency of the evidence to support a conviction. *State v. Witcher*, 6th Dist. Lucas No. L–06–1039, 2007–Ohio–3960, ¶ 20.

> {¶ 21} A challenge to a conviction based upon a claim of insufficiency of the evidence presents a question of law on whether the evidence at trial is legally adequate to support a jury verdict on all elements of a crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An appellate court does not weigh credibility when reviewing the sufficiency of evidence to support a verdict. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A reviewing court considers whether the evidence at trial "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

¶ 22} Appellant contends that because appellant's identity as the perpetrator was not established during trial, he could not have been convicted of the charges. As recently noted by the Supreme Court of Ohio "[l]ike any fact, the state can prove the identity of the accused by 'circumstantial' or 'direct' evidence." *State v. Tate*, 140 Ohio St.3d 442, 2014–Ohio–3667, 19 N.E.3d 888, ¶ 15. The court further stressed that "[a] witness need not physically point out the defendant in the courtroom as long as there is sufficient direct or circumstantial evidence proving that the defendant was the perpetrator." *Id.* at ¶ 19.

{¶ 23} Reviewing the trial testimony, we find that sufficient evidence was presented to establish that appellant was the individual that committed the crimes. First, appellant admitted being at the location though he denied having the air pistol. Thornsberry and Campbell testified regarding their participation in the events which included appellant and two of the officers identified appellant in the courtroom. One officer, Deputy Summers, testified that appellant's nickname was Casper; the name that eyewitness D.H. said belonged to the perpetrator.

{¶ 24} Based on the foregoing, we find that appellant's convictions were supported by sufficient evidence. Appellant's first and second assignments of error are not well-taken.

*Sax*, 2015-Ohio-77, ¶¶ 20-24.

The Due Process Clause of the Fourteenth Amendment requires a state to prove every element of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

19

Because both *Jackson* and AEDPA apply to Sax's sufficiency claim, federal habeas review requires deference at two levels. "'First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by [the] AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis. First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner]. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010). The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis,* 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Sax asserts that the prosecution failed to present credible evidence that he was the person who robbed and beat the victim. This argument fails to persuade. As the state appellate court explained, there was strong circumstantial evidence that established Sax's identity as the person who committed the crimes. And it is well established that identification can be inferred from circumstantial evidence; direct, in-court identification is not required. *See, e.g., United States v. Boyd*, 447 Fed. Appx 684, 690 (6th Cir. 2011) (citing *United States v. Leek*, 78 F.3d 585, 1996 WL 99811, at *6–7 (6th Cir. 1996) (unpublished table decision) ("In-court identification is not essential so long as the identity of the accused has been proved by adequate circumstantial

evidence."); *United States v. Alexander*, 48 F.3d 1477, 1490 (9th Cir. 1995); *United States v. Morrow*, 925 F.2d 779, 781 (4th Cir. 1991); *United States v. Capozzi*, 883 F.2d 608, 617 (8th Cir.1989); *United States v. Cooper*, 733 F.2d 91, 92 (11th Cir. 1984); *United States v. Weed*, 689 F.2d 752, 754 (7th Cir.1982); *United States v. Darrell*, 629 F.2d 1089, 1091 (5th Cir.1980) ("[A] witness need not physically point out a defendant so long as the evidence is sufficient to permit the inference that the person on trial was the person who committed the crime.").

Sax was found guilty of robbery and aggravated burglary, which the trial court merged for purposes of sentencing.  In Ohio, robbery includes "inflict[ing] physical harm on another" while "attempting or committing a theft . . . ."  Ohio Rev. Code § 2911.02(A)(2).  Ohio's definition of aggravated burglary includes "trespass[ing] in an occupied structure . . . when another person other than an accomplice of the offender is present, with purpose to commit . . . any criminal offense, if . . . [t]he offender inflicts . . . physical harm on another."  Ohio Rev. Code § 2911.11(A)(1).

At trial, Detective Sergeant Querin testified that "[Sax] made admissions to going into the house, . . . splitting [the victim's] head open, [and] even made the comment that he should be charged with aggravated assault for doing that."  ECF Doc. No. 5-2 at Page ID# 286.

Thornsberry, Sax's accomplice, recounted that:  he and Sax planned to rob the victim because it would be easy (ECF Doc. No. 5-2 at Page ID# 226); they knew that the victim possessed drugs (ECF Doc. No. 5-2 at Page ID# 230); the victim did not invite them into his home and "wanted [them] out" (ECF Doc. No. 5-2 at Page ID# 227-28); during the robbery, he heard "give me what you got, give me your money" (ECF Doc. No. 5-2 at Page ID# 229); the robbery "required force" and he and Sax "started fighting" with the victims because the theft "wasn't as easy as [they] thought it was going to be" (ECF Doc. No. 5-2 at Page ID# 229-30);

21

Sax hit the victim with his gun (ECF Doc. No. 5-2 at Page ID# 229); and he and Sax split the money and the balloons of heroin that they stole. (ECF Doc. No. 5-2 at Page ID# 230-31).

Sax's half-sister and Thornsberry's girlfriend, Campbell, testified that she was with Sax, Thornsberry, and her roommate Fernekees the day of the incident, and she heard Sax and Thornsberry discussing how they could obtain more heroin from the victim.  ECF Doc. No. 5-2 at Page ID# 204-06.  She described driving Sax and Thornsberry to the victim's home and seeing them enter the home and return to the car a few minutes later.  ECF Doc. No. 5-2 at Page ID# 204-09.

In addition, the state introduced evidence of the victim's injuries from the beating, including damage to his eye and head.  *See* ECF Doc. No. 5-2 at Page ID# 305-06.  And Deputies Corbin and Shupp of the Huron County Sheriff's office identified Sax in the courtroom. ECF Doc. No. 5-2 at Page ID# 275, 297.

From this evidence, a rational jury could have concluded that Sax committed robbery and aggravated burglary by entering the victim's apartment without permission and with the intent to rob him, and then injuring the victim by hitting him with the BB gun in the course of robbing him.

Sax also was convicted of tampering with evidence, which is committed when a person "knowing that an official proceeding or investigation is . . . about to be or likely to be instituted, . . . [a]lter[s], destroy[s], conceal[s], or remove[s] any record, document, or thing, with purpose to impair its value or availability as evidence in . . . [an] investigation . . . ."  Ohio Rev. Code § 2921.12(A)(1).

Campbell testified that she saw a gun in Sax's hand while she drove him away from the victim's home.  ECF Doc. No. 5-2 at Page ID# 209.  She said she saw Sax throw the gun out of

the car.  ECF Doc. No. 5-2 at Page ID# 209.  She testified that Sax told her that he needed to "throw [the gun] out."  ECF Doc. No. 5-2 at Page ID# 210.  Thornsberry also testified that the gun was thrown out the car window into a creek.  ECF Doc. No. 5-2 at Page ID# 232.  He explained that he and Sax suspected the police might get involved, so they devised a plan for Thornsberry to hit Sax several times to make it look like the burglary victim had injured Sax in a fight.  ECF Doc. No. 5-2 at Page ID# 236-37.

Based on this evidence, a jury could have rationally concluded that Sax tampered with evidence.  He knew that a police investigation was likely and took steps to conceal evidence.

Thus, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the state proved, beyond a reasonable doubt, the essential elements of aggravated robbery, burglary, and tampering with evidence.  The state court's decision rejecting the insufficiency of the evidence claim was, therefore, neither contrary to, nor an unreasonable application of, *Jackson* and the Supreme Court cases following it.  I recommend that the Court dismiss Sax's third ground for relief for want of merit.

## VII.    Conclusion

Because Sax has presented only procedurally defaulted (claims one through five) and meritless (claim six) claims, I recommend that the Court DISMISS Sax's petition for writ of habeas corpus (ECF Doc. No. 1) in its entirety.


Dated: July 25, 2017

Thomas M. Parker
United States Magistrate Judge

23

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).